In re LEASING CONSULTANTS
INCORPORATED, Bankrupt.

PODELL & PODELL,
Claimant-Appellant-Appellee,

v.

George FELDMAN, as trustee in Bankruptcy of Leasing Consultants Incorporated, Respondent-Appellee-Appellant.

No. 94, Docket 78–5034.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1978.
Decided Jan. 25, 1979.

Marshall C. Berger, New York City (George A. Hahn, Hahn, Hessen, Margolis & Ryan, New York City, of counsel), for respondent-appellee-appellant.

Daniel M. Shientag, New York City, for claimant-appellant-appellee.

Before MEDINA, MANSFIELD and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This appeal is the latest of several judicial proceedings which have played a role in determining the various legal consequences of a misdeed which took place about ten years ago. The parties before the Court are appellant George Feldman, trustee in bankruptcy for Leasing Consultants Incorporated ("Leasing"), and appellee Podell & Podell, a now defunct New York law firm. The major participants in the transactions giving rise to this litigation were Martin Miller, the former president of Leasing, and Bertram Podell, a former Congressman and a former member of Podell & Podell. Because the interrelationship of the many proceedings preceding this appeal is crucial to our decision today, a rather detailed recital of what has gone before is necessary.

In July, 1973, Bertram Podell was indicted by a grand jury sitting in the Southern District of New York. The indictment charged Podell with conspiracy, solicitation and acceptance of bribes, criminal conflict of interest and perjury. At trial before Judge Robert L. Carter the government introduced evidence that in 1969, while Podell was a member of Congress, his law firm received $12,350 in "legal fees" from Leasing and his reelection committee received $29,000 as a campaign contribution from Leasing's president, Martin Miller. The government contended that these sums were received in return for Podell's advocating the interests of Florida Atlantic Airlines, a subsidiary of Leasing, before various government agencies. On the tenth day of the trial, in October of 1974, Podell pleaded guilty to one count of conspiracy to defraud the United States and to violate the conflict of interest statute, 18 U.S.C. § 371, and to one count of accepting compensation in violation of the conflict of interest statute, 18 U.S.C. § 203.[1] Subse-

---

1. The conflict of interest statute provides, and provided, in pertinent part:

    (a) Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly receives or agrees to receive, or asks, demands, solicits, or seeks, any compensation for any services rendered or to be rendered either by himself or another—

    (1) at a time when he is a Member of Congress . . .

in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court-martial, officer, or any civil, military, or naval commission . . .

quently, this Court affirmed the trial court's denial of a post-conviction motion by Podell to withdraw his guilty plea and upheld the judgment of conviction. *United States v. Podell*, 519 F.2d 144 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975).[2]

Meanwhile, across the river, Bankruptcy Judge William J. Rudin of the Eastern District of New York was presiding over Leasing's bankruptcy. Leasing, not having gotten what it paid for, began having financial difficulties and in August, 1970, a petition was filed under Chapter XI. In September of 1970 Podell & Podell filed a proof of claim for $16,000, representing the balance purportedly due to Podell & Podell for professional services rendered. In response, George Feldman, Leasing's trustee in bankruptcy ("trustee"), filed a counterclaim to recover the $12,350 in "legal fees" paid by Leasing to Podell & Podell in 1969.

In March, 1977, after a trial of the claim and of the counterclaim,[3] Bankruptcy Judge Rudin made the following findings of fact. In 1968 Leasing had acquired Florida Atlantic Airlines, which flew between Florida and the Bahamas. Shortly after the purchase, Leasing learned that Florida Atlantic did not have the authority to land its planes in the Bahamas, and that unless authority could be obtained, the airline would have to cease all its operations. After being referred to Bertram Podell by Melvin Heiko, Leasing's attorney in the Florida Atlantic purchase, Martin Miller agreed to pay Podell for his services in obtaining landing rights. Leasing paid Podell & Podell $12,350 pursuant to this agreement. Heiko then suggested that Podell & Podell be retained at $1,000 per month to obtain business for Florida Atlantic. The $16,000 claim filed by Podell & Podell in the bankruptcy proceeding was based on this retainer agreement.

Bankruptcy Judge Rudin concluded, however, that "[n]o services of any kind, nature or description were ever rendered for and on behalf of the debtor by the firm of Podell & Podell to earn the [$16,000] claimed [under the retainer agreement] or any [part] thereof." In addition, he concluded that the $12,350 already paid to Podell & Podell by Leasing was "illegally paid and accepted."[4] Judgment was entered striking the $16,000 claim of Podell & Podell and awarding the trustee recovery against Podell & Podell on the counterclaim in the amount of $12,350, with interest.

Podell & Podell appealed Bankruptcy Judge Rudin's decision. Judge Jack B. Weinstein of the Eastern District, in an oral opinion, rejected the firm's argument that there was no substantial basis in the evidence to support the bankruptcy court's determination that the $12,350 at issue had been paid pursuant to the illegal conspiracy admitted by Podell's guilty plea in the criminal case. Nevertheless, Judge Weinstein remanded the case to the bankruptcy judge for reconsideration of the judgment on the counterclaim in light of a decision, by Judge Kevin Thomas Duffy, entered in the Southern District of New York after Bankruptcy

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States. 18 U.S.C. § 203.

2. Miller, indicted and tried with Podell, also pleaded guilty, in the course of the trial, to the portion of the indictment charging conspiracy to defraud the United States and to violate the conflict of interest statute, and then unsuccessfully appealed his conviction to this Court. *United States v. Podell*, 519 F.2d 144 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975).

3. An adversary proceeding was conducted pursuant to Bankruptcy Rule 611. *See* 4B Collier on Bankruptcy ¶ 70.90[1], at 1027 (14th ed.

1978). Before the hearing Podell & Podell made an application under Bankruptcy Rule 305 to withdraw its claim, presumably in hopes of depriving the court of jurisdiction over the counterclaim. The bankruptcy judge denied the application.

4. Although the trustee had initially proceeded on the theory that no services had been rendered and thus no consideration had been given in exchange for the money paid to Podell & Podell, at the hearing the trustee presented evidence tending to show that the payments made were in exchange for illegal services. The bankruptcy judge granted the trustee's motion to have the pleadings conform to the proof.

Judge Rudin's order had been filed in the Eastern District but before Judge Weinstein heard the appeal.

In the Southern District proceedings before Judge Duffy, commenced in January of 1976, the government had sought to recover, in a civil action, the $41,350 allegedly paid by Leasing and Miller to Podell and his law firm in violation of 18 U.S.C. § 203.[5] The government proceeded on the theory that Podell had received this money in violation of the fiduciary duty he owed to the government and that under equitable principles he should therefore be held accountable by means of a constructive trust. In an opinion and order filed May 31, 1977, Judge Duffy granted the government's motion for summary judgment, noting that "courts have not been reluctant to recognize and remedy the misuse of a confidential relationship with the United States by employees or officials serving inconsistent interests for their own gain." The summary judgment in favor of the government, like the earlier criminal conviction, was appealed to and upheld by this Court. *United States v. Podell*, 572 F.2d 31 (2d Cir. 1978).

Shortly after Judge Duffy rendered his decision, Podell moved that Judge Duffy reopen the proceedings, for the first time calling to Judge Duffy's attention the bankruptcy proceedings pending in the Eastern District in which the trustee in bankruptcy for Leasing had recently been awarded a $12,350 judgment against Podell & Podell. In an order adhering to his original decision Judge Duffy wrote:

Of [Bankruptcy Judge Rudin's] award, $11,000 appears to be the subject matter of my May 31, 1977 order, as well. Bankruptcy Judge Rudin's award is presently on appeal [to the Eastern District].

The fact of these [bankruptcy] proceedings [was] never made known to me by the parties, particularly defendant and his counsel, who now appears incredulous that "although [a] matte[r] of public record" these proceedings did not "appear to have been considered" by me. . . . What appears incredible to me is that defendant's counsel merely represents that the [Leasing] Trustee was awarded judgment during the pendency of the motion before this Court, while ignoring the fact that Bankruptcy Judge Rudin's opinion on the award was dated March 25, 1977—eleven days prior to defendant's filing any papers in opposition to the summary judgment motion. It would thus appear that plaintiff and/or his counsel deemed that award to be irrelevant to my consideration of the summary judgment motion at that time. Instead, more than 30 days after the rendering of my opinion and order, during the pendency of the appeal from Bankruptcy Judge Rudin's award to another court, this matter is suddenly deemed crucial to my determination. Yet defendant has not even attempted to explain the basis for his present supposition. His counsel merely points out that "[p]atently, it would be unfair and inequitable to require the defendant to pay twice." . . . However, Bankruptcy Judge Rudin's award presently lacks finality; defendant might never be the subject of conflicting judgments. In any event, defendant is free to raise his argument on appeal in the Eastern District.

Back in the Eastern District, when the bankruptcy claim and counterclaim were reconsidered on remand, Bankruptcy Judge Rudin, like Judge Duffy, adhered to his original decision.[6] Rejecting the claim that

---

5. The government sought to recover the $29,000 paid by Miller to Podell as a campaign contribution and the $12,350 paid by Leasing to Podell & Podell, purportedly as fees for legal services. Judge Duffy awarded the government only $40,000, noting that $1,350 of the sum paid by Leasing to Podell & Podell covered a trip to Puerto Rico by Podell's father (also a member of the law firm) and that there was no evidence indicating that as a matter of law this

money had been paid as compensation for Podell's illegal activities on behalf of Leasing.

6. When Bankruptcy Judge Rudin's original decision was appealed to the district court, Judge Weinstein raised the matter of the $1,350 that Judge Duffy had indicated should not be charged against Podell. In response to Judge Weinstein's suggestion, the parties stipulated that the trustee's counterclaim would be reduced by $1,350. When Bankruptcy Judge Ru-

it would not be equitable to require Podell to pay the same sum twice, Bankruptcy Judge Rudin wrote:

> This Court has no jurisdiction over the proceedings pending in the Southern District of New York. In fact, for reasons best known to defendant, knowledge of its institution and pendency was not brought to this Court's attention. It is noted that the opinion and order made by District Judge Duffy in the Southern District granting summary judgment to the government is dated May 31, 1977, while this Court's decision is dated March 25, 1977. Some 30 days after Judge Duffy rendered his opinion, defendant moved to reargue or reopen the proceedings to seek credit for whatever amount he may be required to pay here and that application was denied by an opinion dated July 28, 1977.

> .    .    .    .    .

> The defendant put himself in the position from which he seeks relief. If he could have had succor from Judge Duffy, he foreclosed himself by not bringing his problem to the Judge's attention at the time of the motion for summary judgment.

Bankruptcy Judge Rudin's decision was again appealed to Judge Weinstein. In a decision rendered from the bench, Judge Weinstein reversed Bankruptcy Judge Rudin's reaffirmation of his decision in favor of the trustee, recommending at the same time that an appeal be taken to this Court for the "edification of the courts and the Bar." It is the trustee's appeal from Judge Weinstein's decision that we are called on to decide today. We reverse the district court's judgment and remand with instructions to reinstate the judgment of the bankruptcy court.

## DISCUSSION

■ Judge Weinstein reversed the judgment of the bankruptcy court on the ground that it would be inequitable to require Podell to pay the same sum twice. We agree with Judge Weinstein's observation that a bankruptcy court acts essentially as a court of equity. *See Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Matter of Stirling Homex Corp.,* 579 F.2d 206, 212 (2d Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979); *see also* 11 U.S.C. § 11(a). Were the rights of other parties not at stake we might also agree with the district court's compassionate assessment that Bertram Podell has been punished enough for the crime of which he stands convicted.[7] But the rights of others are involved and we are unable to agree that justice will be served by defeating the trustee's right of recovery, recognized by both the bankruptcy court and the district court itself, in order to extricate Podell and his law firm from a predicament of their own creation.

■ The government's civil action in the Southern District was grounded on the theory that Podell's receipt of money in violation of the conflict of interest statute constituted a breach of the fiduciary duty owed to the government by Podell and that Podell was thus accountable by means of a constructive trust. Such an equitable accounting is designed to prevent unjust enrichment by requiring the disgorgement of any benefits or profits received as a result of a fiduciary's breach of the duty of loyalty. *See United States v. Podell, supra,* 572 F.2d at 35, *citing United States v. Carter,* 217 U.S. 286, 305–06, 30 S.Ct. 515, 54 L.Ed. 769 (1910). The bankruptcy court's earlier award in favor of the trustee served this purpose of stripping Podell of his ill-gotten gains, and the existence of that

din reconsidered the matter on remand he reaffirmed his earlier decision, as modified by this stipulation. The trustee was thus awarded judgment in the sum of $11,000 rather than $12,350 as previously ordered.

**7.** Podell has been sentenced to two years' imprisonment, to serve six months. He has been fined $5,000. He is precluded by the terms of 18 U.S.C. § 203 from holding any office of honor, trust or profit under the United States. He has been disbarred. He has paid the $40,-000 judgment obtained by the government in its civil action in the Southern District of New York.

award would clearly have been relevant to Judge Duffy's determination of the extent to which Podell had "profited" by his wrongful act. Yet although Podell attempted to raise issues of fact regarding the amount of money subject to disgorgement, he chose not to raise Bankruptcy Judge Rudin's award to the trustee as an affirmative defense to the government's summary judgment motion, and he therefore precluded Judge Duffy from harmonizing his decision with the earlier judgment of the bankruptcy court. When Podell moved to reopen, Judge Duffy was understandably unwilling to modify the judgment on the basis of information which, although available to Podell prior to his filing any papers in opposition to the summary judgment motion, was not revealed to the court in a timely manner.

Podell and his law firm also had available to them the interpleader provisions of Fed. R.Civ.P. 22(1),[8] incorporated in Bankruptcy Rule 722 [9] and designed specifically to protect a litigant who may be exposed to multiple liability. *Cf. Diamond v. Oreamuno*, 24 N.Y.2d 494, 504, 301 N.Y.S.2d 78, 86, 248 N.E.2d 910, 915 (1969).

The failure of Podell and his firm, both of whom were represented by the same counsel, to notify either court of the pendency of the other action is at the very least remarkable. It is difficult for us to resist the inference that this silence was prompted by the fear that the chances of a favorable outcome in each forum would be diminished if each court were aware of the other's proceedings. Judge Weinstein, however, resisting this very inference, accepted the contrary explanation of counsel—who ascribed his own conduct to "naivete and stupidity"—and found no attempt to conceal

anything from the court. However, our balancing of the equities is not affected by our assessment of the motive for the silence maintained by Podell and his firm. We are unable to conclude that the judgment obtained by the trustee, suing on behalf of creditors not party to any illegal payments, should be forfeited because of either the "naivete and stupidity" or the unsuccessful strategic gamble of his opponent.

The district court, in attempting to deal fairly with Podell, in our view unfairly deprived the trustee of the benefit of a judgment to which he is entitled. The trustee has pursued his counterclaim diligently and has in no way contributed to the creation of the bind from which his opponents now seek to escape at his expense. To suggest, as has appellee, that the trustee should look to the United States for any relief is to ignore the fact that because of the failure of Podell and his firm to avoid the double payment problem in a timely fashion, the trustee has already been required to present his case to the bankruptcy court, the district court, the bankruptcy court again, the district court again, and now the Court of Appeals. He too, in our view, has been punished enough.

But our inquiry does not end here. If the trustee had not been authorized to recover the illegal payments made by Leasing to Podell & Podell, then the district court would have reached the right result but for the wrong reason and we would be obliged to affirm. *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *In re Lovich*, 117 F.2d 612, 614 (2d Cir. 1941); *In re Schwartz*, 89 F.2d 172, 173 (2d Cir. 1937); 2A Collier on Bankruptcy ¶ 25.-30[1], at 1022–23 (14th ed. 1978). However, counsel for Podell & Podell has advanced no

---

**8.** Fed.R.Civ.P. 22(1) provides:

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he

is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

**9.** Rule 22(1) of the Federal Rules of Civil Procedure applies in adversary proceedings.

Bankruptcy rule 722.

basis on which we can uphold the judgment of the district court.

■ We have been cited no New York case addressing the precise issue presented by this appeal, that is, the right of a creditor or a trustee in bankruptcy to recover corporate payments from one who received such payments in violation of the federal conflict of interest statute, nor does our independent research reveal any such cases. Where a state law question has not been clearly decided by the state courts, we must make our best estimate of what the state court would rule to be its law. *Marina Management Corp. v. Brewer*, 572 F.2d 43, 46 (2d Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978), *citing Holt v. Seversky Electronatom Corp.*, 452 F.2d 31, 34 (2d Cir. 1971). Here, we accept the reasonable and carefully considered analysis by the bankruptcy judge, adopted by the district court, on this unanswered question of New York law. *Cf. Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 204, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (diversity jurisdiction); *Lomartira v. American Automobile Insurance Co.*, 371 F.2d 550, 554 (2d Cir. 1967) (diversity jurisdiction).

■ Both the bankruptcy court and the district court ·concluded that the trustee was authorized by the Bankruptcy Act to recover the illegal payments made by Leas-

ing to Podell & Podell. Section 70(e) of the Act, 11 U.S.C. § 110(e),[10] authorizes a trustee in bankruptcy to avoid any transfer made by the bankrupt which is voidable under either state or federal law by any creditor of the debtor having a claim provable under the Act.

In this case the applicable state law is Section 720 of New York's Business Corporation Law,[11] which provides in relevant part that a trustee in bankruptcy, acting as the representative of creditors, may bring an action against a director or officer of a corporation to set aside an unlawful transfer of corporate assets. Accordingly, for purposes of § 70(e) the creditors had a right to void the transaction under state law.

The predecessor of Section 720 has been held by New York courts to impose liability not only on officers and directors, as stated on the face of the statute, but also on "the actual recipient of money wrongfully withdrawn from the corporation." *Singer v. State Laundry, Inc.*, 188 Misc. 583, 586–87, 68 N.Y.S.2d 808, 812 (Sup.Ct.N.Y.County 1947). *See also Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744, 748–49 (S.D.N.Y.1966); *In re Cohen's Estate*, 137 N.Y.S.2d 300, 309 (Sup.Ct.N.Y. County 1954), *aff'd* 285 App.Div. 1119, 141 N.Y.S.2d 819 (1st Dep't), *aff'd* 309 N.Y. 935, 132 N.E.2d 311 (1955) ("settled law that the

---

10. Section 70(e) of the Bankruptcy Act provides in part:

(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however*, That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or

obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws.

11 U.S.C. § 110(e).

11. Section 720 provides in part:

(a) An action may be brought against one or more directors or officers of a corporation to procure· a judgment for the following relief:

. . . . .

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

. . . . .

(b) An action may be brought for the relief provided in this section . . . by a . . . trustee in bankruptcy . . . . .

N.Y.Bus.Corp.Law § 720 (McKinney).

officers and directors of a corporation stand in ·a fiduciary relation to it and owe it a duty not to divert its property to other than proper corporate purposes, that if they wrongfully divert it they breach that duty, and *the wronged corporation is entitled to follow the diverted property . . . as long as the diverted property may be traced and identified or until it comes into the hands of a bona fide purchaser for value*") (emphasis added). *Cf. Rubenstein v. Berch,* 261 App.Div. 265, 267, 25 N.Y.S.2d 202, 204–05 (2d Dep't 1941) (common law cause of action coexists with statutory remedy). There are clear indications that the New York courts would consider payment out of corporate funds in furtherance of a conspiracy to violate 18 U.S.C. § 203 to be a diversion of property "to other than proper corporate purposes." The New York courts have recognized that commission by a corporation of illegal acts, even if intended to be advantageous to the corporation, may entail hazards to the corporation, its stockholders and creditors, who may, therefore, seek relief in court. *See, e. g., Abrams v. Textile Realty Corporation,* 97 N.Y.S.2d 492, 495 (Referee 1949); *Roth v. Robertson,* 64 Misc. 343, 344–46, 118 N.Y.S. 351, 352–53 (Sup.Ct.Erie County 1909). *See also Miller v. American Telephone & Telegraph Co.,* 507 F.2d 759, 762 (3d Cir. 1974).

Only one further point requires discussion. Podell & Podell unsuccessfully urged both Bankruptcy Judge Rudin and Judge Weinstein to deny recovery to the trustee on the ground that the trustee's counterclaim was barred by the doctrine of *in pari delicto,* frequently invoked by courts to justify their refusal to allow recovery under illegal agreements. This argument, however, misperceives both the scope of the trustee's power and the nature of the *in pari delicto* doctrine.

■ The trustee in bankruptcy stands not only in the shoes of the bankrupt—he fits as well into the overshoes of the bankrupt's creditors. *Schneider v. O'Neal,* 243 F.2d 914, 918 (8th Cir. 1957). Section 70(e) empowers the trustee · to avoid certain transfers irrespective of the existence of a cause of action in the bankrupt, *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135, 137–38 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Buchman v. American Foam Rubber Corp.,* 250 F.Supp. 60, 65 (S.D.N.Y. 1965). When acting under this section, a trustee is vested with the rights of creditors and is not limited to the rights of the bankrupt. 4B Collier on Bankruptcy ¶ 70.90, at 1029 (14th ed. 1978). Thus, even if Leasing itself would be barred by the defense of *in pari delicto* from recovering the payments made to Podell, it does not follow that an action taken by the trustee acting as the representative of Leasing's *creditors* must similarly fail. *Cf. J. M. Deutsch, Inc. v. Robert Paper Co.,* 13 App.Div.2d 768, 215 N.Y.S.2d 939, 941, *appeal denied,* 14 App. Div.2d 531, 218 N.Y.S.2d 938 (1st Dep't 1961).

■■ The rationale of the *in pari delicto* doctrine supports such a result. The doctrine denies judicial relief, in the form of either enforcement or rescission, to parties to illegal contracts. *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465, 469, 199 N.Y.S.2d 483, 485, 166 N.E.2d 494, 496 (1960); 17 Am.Jur.2d *Contracts* § 216 (1964). However, this principle is based not on solicitude for the defendant, but on concern for the public welfare, and thus when application of the doctrine would not be in the public interest, the courts will permit recovery. *Seligson v. New York Produce Exchange,* 378 F.Supp. 1076, 1085–86 (S.D. N.Y.1974); 2 Restatement of Contracts § 598, Comments a and b, § 601 and Illustrations, § 604 and Illustrations (1932); 17 Am.Jur.2d, *Contracts* §§ 222, 227 (1964). As Judge Weinstein observed when this case first came before him, "recovery here will enforce the public policy against this kind of illegal contract and give recovery to those who are blameless." Thus our conclusion that under § 70(e) of the Bankruptcy Act the trustee is entitled to sue on behalf of the creditors does not undercut the purpose of the doctrine of *in pari delicto.* The creditors of Leasing are not alleged to have been involved in the illegal payment in any

way. Permitting them to recover does not involve the Court in a dispute between scoundrels but rather extends aid to innocent creditors, in furtherance of the aims of the Bankruptcy Act, and strips a government servant of profit derived from a breach of duty, in furtherance of the aims of the federal conflict of interest statute.

Given our conclusion that the trustee was entitled under § 70(e) to the judgment rendered by the bankruptcy court and our view that the equities of the case do not dictate reversal of that judgment, we reverse the judgment of the district court and remand with instructions to reinstate the judgment of the bankruptcy court.